UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PETER DAZA,                              )
     *Plaintiff*,                       )
                                           )
     *vs.*                              )    1:18-cv-02951-JMS-MPB
                                           )
STATE OF INDIANA, RUSSELL FOWLER, NINA   )
DANIEL, and VALERIE COCKRUM,             )
     *Defendants*.                      )

## ORDER

Plaintiff Peter Daza, who is Hispanic, Native American, over the age of forty, and a Democrat, worked for the State of Indiana Department of Transportation ("INDOT") as a Geologist from 1993 until he was terminated in 2015. In 2017, he initiated a lawsuit against Defendants the State of Indiana, INDOT District Deputy Commissioner Russell Fowler, INDOT District Human Resources Manager Nina Daniel, and INDOT Technical Services Director Valerie Cockrum, alleging claims of discrimination based on race, color, age, and political speech and association, and retaliation based on his complaints about discrimination and his exercise of his right to free speech and political association. *Daza v. State of Indiana, et al.*, Case No. 1:17-cv-316-JMS-MPB ("*Daza I*"). This Court granted summary judgment in favor of Defendants in *Daza I*, and Mr. Daza appealed the portion of that decision granting summary judgment on his § 1983 political discrimination and political retaliation claims to the Seventh Circuit Court of Appeals.

Mr. Daza initiated this lawsuit on September 25, 2018, twenty-six days after the Court granted summary judgment in favor of Defendants in *Daza I*. In this lawsuit, Mr. Daza claims that Defendants discriminated and retaliated against him based on his race, color, age, and political speech and association by failing to rehire him after his termination. [Filing No. 1.] Magistrate Judge Matthew Brookman stayed this case on May 17, 2019, pending resolution of Mr. Daza's

appeal of the decision in *Daza I*. [Filing No. 32.] The Magistrate Judge noted in his Order that "staying this case pending a decision in *Daza I* before the Seventh Circuit Court of Appeals is the most efficient course." [Filing No. 32.] Subsequently, the Court administratively closed this case pending resolution of the appeal in *Daza I*. [Filing No. 34.]

On October 24, 2019, the Seventh Circuit Court of Appeals affirmed this Court's grant of summary judgment in *Daza I*. *Daza v. Indiana*, 941 F.3d 303 (7th Cir. 2019). The Court reopened this case, and reinstated two pending motions: (1) Defendants' Motion for Rule 11 Sanctions, [Filing No. 16]; and (2) their "Early" Motion for Summary Judgment,[1] [Filing No. 24]. Those motions are now ripe for the Court's decision. Because Defendants' Motion for Rule 11 Sanctions is based on their assertion that Mr. Daza's lawsuit is meritless, the Court first considers the "Early" Motion for Summary Judgment.

## I.
## "EARLY" MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not

---

[1] After Defendants filed their Motion for Rule 11 Sanctions, the Magistrate Judge entered an Order granting Defendants "leave to file a dispositive motion limited to the legal issues briefed in connection with the [Motion for Rule 11 Sanctions], while retaining the right to file a dispositive motion raising any other Rule 56 defense later in the case, so long as the 'early' dispositive motion is filed by April 10, 2019." [Filing No. 22.] The pending "Early" Motion for Summary Judgment is the dispositive motion contemplated in the Magistrate Judge's Order.

establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the

existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

**B.  Statement of Facts**

The following factual background is set forth pursuant to the standards detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

*1.  Mr. Daza's Termination From INDOT*

Mr. Daza began working as a geologist for INDOT in 1993. *Daza v. State*, 331 F. Supp. 3d 810, 820 (S.D. Ind. 2018).[2]  On December 10, 2015, Ms. Daniel, INDOT's District Human Resources Manager, provided Mr. Daza with a termination memorandum which stated:

> On 3/12/13 you received a Written Reprimand for exhibiting defiant and insubordinate behavior by your refusal to follow a direct Agency expectation.  This defiance was exhibited in front of members of the construction staff, as well as, employees you directly supervised.  You were reminded that this behavior did not reflect INDOT's Core4 values and was not acceptable.
>
> Your 2013 annual review addressed your struggle to cooperate on assignments you did not agree with (Teamwork) and your need to improve upon your method of delivery and professionalism (Customer Service).
>
> In 2013 you received Core4 Training which set an expectation for all INDOT employees to support a culture of Respect, Teamwork, Accountability, and Excellence (the "Core4 Principles").  In 2014 you received Act 1 training which set expectations for all INDOT employees on how to speak to and work with others and the expectation that employees be accountable for your behavior and actions. Keeping your words and behavior "Above the Line".
>
> On 11-30-15 your Director discussed with you your abrasive interaction with another Director and suggested that you meet with that manager to clear the air,

---

[2] The Court cites to its Order on Defendants' Motion for Summary Judgment in *Daza I* for certain background facts.

you declined to do so. On 12/2/15 you refused to participate fully in an Agency required training evidenced by your leaning back with arms folded and eyes closed and commenting "this is f[***]ing gay" in reference to one of the training exercises. On 12/7/15 you disseminated…an email to possible awardees concerning an, as of yet, unapproved bonus request. These are all examples of your continued defiance of Agency culture and expectations.

Your lack of judgment and inability to conduct yourself in a manner in which your actions do not bring you or the Agency into disrepute cannot be tolerated.

For the reasons listed above, you are hereby notified that effective immediately your employment with the Indiana Department of Transportation is terminated in accordance with IC-4-15-2.2-24 which states "An employee in the unclassified service is an employee at will and serves at the pleasure of the employee's appointing authority…and may be dismissed, demoted or transferred for any reason that does not contravene public policy."

*Daza*, 331 F. Supp. 3d at 834-35.

> ### 2. The December 16, 2015 Charge of Discrimination and the December 17, 2015 Civil Service Employee Complaint

On December 16, 2015, Mr. Daza filed a Charge of Discrimination with the Indiana Civil Rights Commission, in which he stated:

I started working for the State of Indiana Department of Transportation in June 1993 as a Geologist. I am of Hispanic and Native American races with darker skin, over 40 years of age with a disability. I had good work performance, and I received performance reviews of meets requirements or above. On December 10, 2015, the Department of Transportation gave me a letter of termination for reasons that were false and discriminatory.

I believe that I am being discriminated against due to my race, Hispanic and Native American, color, darker skin, age, over 40, and disability, which are violations of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, as amended [the "ADEA"], and the Americans with Disabilities Act, as amended.

*Id.* at 835-36.

On December 17, 2015, Mr. Daza filed a Civil Service Employee Complaint with the Indiana State Personnel Department, stating:

1. Employee suffered discrimination based on his race, national origin. This

discrimination ultimately [led] to his termination.

2. Employee suffered discrimination due to a partial disability of limited eyesight requiring glasses and the disability of Meniere's disease which [led] to his termination.

3. Employee suffered age discrimination which [led] to his termination.

4. INDOT failed to follow their practice of progressive discipline.

5. Employee did not violate the Bonus Policy Guidelines referenced in the termination letter.

The basis for each assertion is included in the attachment to this complaint. The employee seeks immediate reinstatement to his position as a geologist for the Vincennes District Testing Department with no lapse in his employment record, full back pay, restoration of his salary with addition of any raise that would be the result of his 2015 fiscal year appraisal, benefits and leave balances.

*Id.* at 836.

### 3. *Mr. Daza Initiates* Daza I

Mr. Daza initiated *Daza I* on January 31, 2017, and filed an Amended Complaint on September 6, 2017. [Filing No. 1 and Filing No. 20 in *Daza I*.] He set forth claims in *Daza I* for: (1) discrimination based on race, color, age, and political speech and association; and (2) retaliation based on his complaints about discrimination and his exercise of his right to free speech and political association. [Filing No. 20 at 4-5 in *Daza I*.]

### 4. *INDOT Fills Mr. Daza's Position*

On October 11, 2017, INDOT publicly posted a listing for a Geologist 2 position in its Vincennes District. [Filing No. 23-1 at 1-4; Filing No. 23-2.] This position was previously held by Mr. Daza. [Filing No. 23-1 at 1.] INDOT received four applications for the Geologist 2 position through the online job bank, and only considered applications for the position that were submitted through the online job bank. [Filing No. 23-1 at 2.] Mr. Daza did not apply for the Geologist 2 position through the online job bank, nor did he attempt to submit a completed job application

through any other method.  [Filing No. 23-1 at 2.]

INDOT ultimately hired Logan Mort-Jones, effective December 18, 2017, for the Geologist 2 position in Vincennes through a competitive hiring process that involved considering only those who applied for the position through the online job bank.  [Filing No. 23-1 at 2.]  Mr. Mort-Jones is younger than Mr. Daza.  *Daza*, 331 F. Supp. 3d at 846.

### 5. *December 2017 Email Exchanges Between Counsel in* Daza I

In December 2017, counsel for Mr. Daza and Defendants exchanged emails regarding discovery disputes in *Daza I* related to the hiring of Mr. Mort-Jones to fill Mr. Daza's former position.  [Filing No. 23-3.]  Specifically, on December 19, 2017, Mr. Daza's counsel emailed Defendants' counsel stating:

> I let you know that INDOT was trying to hire a much younger person instead of reinstating Daza, and you stated that you did not know anything about it.  I invited you to find the information and produce it.  I asked you if those facts were part of the pending [administrative] case or if it was necessary for Daza to file another [administrative] case, and you stated that you did not know.  I asked you to tell me INDOT's position so that I could try to comply with their position.
>
> I asked you for the personnel file of the other persons involved, and you stated that you would look into it.

[Filing No. 23-3 at 5.]

> Defendants' counsel responded to Mr. Daza's counsel in a December 28, 2017 email:
>
> Per your request, I have confirmed that INDOT has hired Logan Mort-Jones for the position that was previously held by Mr. Daza.  His first day of work was December 18, 2017.  I can't state whether the fact that someone has been hired to fill that position is "part of the pending [administrative] case."  To the extent you intend to offer testimony regarding the hiring of this new employee, all evidentiary rules should apply.  I also cannot state whether you need to file another [administrative] case because I am unclear as to your purpose for doing so.
>
> As I explained to you, I represent INDOT.  I do not make decisions regarding whether or not to reinstate Mr. Daza, but I have previously, on more than one occasion, provided you with INDOT's response to your request to reinstate Mr. Daza.  With that in mind, if you wish to proceed with settlement discussions or

mediate this case, please advise because INDOT is certainly open to the possibility of resolving this case if you and Mr. Daza are willing to discuss a resolution separate from reinstatement. However, if that is the only option you are willing to discuss, a mediation will not be fruitful and would further unnecessarily delay this matter.

[Filing No. 23-3 at 3.]

Mr. Daza's counsel replied later in the day on December 28, 2017 as follows:

Your email below states for the first time that INDOT hired Logan Mort-Jones for the position that was previously held by Mr. Daza, instead of reinstating Mr. Daza as he has repeatedly requested. Please produce all documents relating to Logan Mort-Jones.

[Filing No. 23-3 at 2.]

> 6. *The Parties Discuss Mr. Mort-Jones in Briefing of Defendants' Motion for Summary Judgment in* Daza I

In their Motion for Summary Judgment in *Daza I*, Defendants argued that INDOT's hiring of Mr. Mort-Jones took place two years after Mr. Daza's termination and did not establish a *prima facie* case of age discrimination. [Filing No. 47 at 26-27 in *Daza I*.] Defendants noted that INDOT had tried to hire Robert Dyer, a sixty-one year-old who was more than ten years older than Mr. Daza, and only after Mr. Dyer declined the offer and two years had passed did INDOT finally hire Mr. Mort-Jones. [Filing No. 47 at 26-27 in *Daza I*.]

In his response to Defendants' Motion for Summary Judgment in *Daza I*, Mr. Daza noted in his "Statement of Material Facts in Dispute" that certain individuals "continued to handle the District's geologist duties until INDOT hired Logan Mort-Jones, a young white male and recent college graduate, to replace Daza on December 18, 2017…. Mort-Jones is unable to perform the duties of the geologist position." [Filing No. 73 at 12 in *Daza I*.] Later, in support of his argument that "[t]here is evidence that Daza's age played a role in the decision to terminate his employment," Mr. Daza argued that "INDOT has admitted that 'INDOT has hired Logan Mort-Jones for the

position that was previously held by Mr. Daza.'" [Filing No. 73 at 33-34 in *Daza I*.] In support of his argument that his retaliation claims were not barred, Mr. Daza asserted "[s]hortly after Daza amended his court complaint to include the individual Defendants, they refused Daza's requests for reinstatement, and instead, they posted Daza's position two more times and hired Logan Mort-Jones to replace Daza…. Mort-Jones was far less qualified than Daza, but he had not complained about discrimination. Furthermore, he was less likely to complain about discrimination, because he was white, more than twenty years younger than Daza, and the Defendants do not claim that he is Hispanic or Native American." [Filing No. 73 at 35 in *Daza I*.]

Defendants again argued in their reply brief in support of their Motion for Summary Judgment in *Daza I* that INDOT's hiring of Mr. Mort-Jones "does not establish a *prima facie* case of age discrimination." [Filing No. 78 at 12 in *Daza I*.] Defendants also contended that "[t]he fact that INDOT hired Logan Mort-Jones more than three months after Mr. Daza added individually named defendants in December 2017 says absolutely nothing about the Defendants' motivations for terminating Mr. Daza's employment in December 2015." [Filing No. 78 at 13 in *Daza I*.] Defendants argued that Mr. Daza's retaliation claim related to actions – including the hiring of Mr. Mort-Jones – that occurred after the filing of his Charge of Discrimination and after his Complaint and Amended Complaint were filed. [Filing No. 78 at 14 in *Daza I*.]

In his surreply, Mr. Daza argued that evidence regarding Mr. Mort-Jones' hiring was relevant to his argument that INDOT tried to cover up its age discrimination. [Filing No. 81 at 18-19 in *Daza I*.]

### 7. *Mr. Daza Files a Second Charge of Discrimination*

On June 12, 2018, four days after filing his surreply in opposition to Defendants' Motion for Summary Judgment in *Daza I*, Mr. Daza filed a Charge of Discrimination with the Equal

Employment Opportunity Commissioner ("EEOC").   [Filing No. 1 at 4.]   Subsequently, he

received a June 28, 2018 Right-to-Sue Letter from the EEOC.   [Filing No. 1 at 4.][3]

> **8.** *The Court Grants Defendants' Motion for Summary Judgment in* Daza I

On August 31, 2018, the Court granted Defendants' Motion for Summary Judgment,

addressing – among many other arguments – Mr. Daza's reliance on INDOT's hiring of Mr. Mort-

Jones to support his age discrimination and retaliation claims.   In connection with the age

discrimination claim, the Court stated:

> As for INDOT's hiring of Mr. Mort-Jones, who is younger than Mr. Daza, this is
> insufficient to establish a prima facie case of age discrimination.   It is undisputed
> that INDOT attempted to hire an individual that was older than Mr. Daza to replace
> him after his termination.   Mr. Daza's only response to this is that the older
> individual was not qualified to do the job, but his opinion that the older individual
> was not qualified is not evidence of discrimination….   Additionally, INDOT's
> hiring of Mr. Mort-Jones nearly two years after Mr. Daza's termination does not
> save Mr. Daza's age discrimination claims….

*Daza*, 331 F. Supp. 3d at 846.

In granting summary judgment on Mr. Daza's retaliation claim, the Court stated:

> As for Mr. Daza's Title VII, ADEA, and Section 1981 retaliation claims based on
> post-EEOC-Charge conduct, Mr. Daza argues that Defendants retaliated against
> him for filing the EEOC Charge by failing to re-hire him and instead trying to hire
> another individual and having [another employee] fill in for him, and also retaliated
> against him for naming the individual Defendants in his Amended Complaint by
> refusing his requests for reinstatement and eventually hiring Mr. Mort-Jones.   Mr.
> Daza has not provided any authority to support his contention that the post-EEOC
> Charge conduct here – Defendants sticking to the decision to terminate Mr. Daza
> by having other employees cover his position and eventually hiring a replacement
> – can constitute retaliation.   The Court recognizes that there may be instances where
> the failure to re-hire a previously-terminated employee after that employee has filed
> an EEOC Charge could constitute evidence of retaliation….   Here, however, Mr.

---

[3] Mr. Daza alleges in his Complaint that he filed the June 12, 2018 Charge of Discrimination and
received the June 28, 2018 Right-to-Sue Letter, but he does not attach the Charge or Right-to-Sue
Letter to his Complaint or to his response to Defendants' Motion for Summary Judgment.   He also
does not provide any details regarding what he alleged in his Charge of Discrimination.   Conse-
quently, the Court cannot discern what Mr. Daza complained of in his June 12, 2018 Charge of
Discrimination.

> Daza has not presented any evidence that he even re-applied for his position and was rejected and, even if he had, any evidence that his EEOC Charge factored into a decision not to re-hire him. Defendants simply stayed the course, had employees cover Mr. Daza's duties, and eventually hired a replacement – nothing more.

*Id.* at 850.

### 9. *Mr. Daza Initiates This Lawsuit*

On September 25, 2018, twenty-six days after the Court granted summary judgment in favor of Defendants in *Daza I*, Mr. Daza initiated this lawsuit. [Filing No. 1.] Mr. Daza alleges that INDOT discriminated against employees based on their political affiliation, that he complained about the discrimination and "spoke about his political views," that he filed *Daza I*, that he requested to be rehired on October 13, 2017, that Defendants did not rehire him, and that Defendants hired Mr. Mort-Jones who is "a white non-Hispanic, who was more than twenty years younger than Daza, who had no job experience as a geologist, and who had not complained about discrimination." [Filing No. 1 at 3-4.] Mr. Daza asserts claims for discrimination based on his race, color, age, and political speech and association, and retaliation "because he opposed and complained about discrimination and exercised his rights to free speech and political association…." [Filing No. 1 at 4-5.]

### 10. *Mr. Daza Appeals in* Daza I

Three days later, on September 28, 2018, Mr. Daza appealed the Court's grant of summary judgment on his § 1983 political discrimination and political retaliation claims. [Filing No. 89 in *Daza I*.] The Seventh Circuit affirmed the Court's grant of summary judgment in favor of Defendants on those claims on October 24, 2019. *Daza*, 941 F.3d 303.

### C. **Discussion**

Defendants raise two main arguments in their Motion for Summary Judgment: (1) that Mr. Daza's discrimination and retaliation claims are barred by res judicata; and (2) that Mr. Daza's

failure-to-rehire claim fails because he never applied for a position with INDOT after he was terminated. The Court addresses each argument in turn.

### 1. Whether Res Judicata Bars Mr. Daza's Claims

Defendants argue that the claims Mr. Daza raises in this lawsuit were expressly decided in *Daza I*. [Filing No. 25 at 6-12.] Defendants note that the Court rejected Mr. Daza's failure-to-rehire claim because a refusal to rehire does not create liability and because Mr. Daza failed to re-apply for his position. [Filing No. 25 at 6.] They assert that Mr. Daza argued in *Daza I* that his failure-to-rehire claim was raised in his first Charge of Discrimination so should be considered in connection with Defendants' Motion for Summary Judgment; that Mr. Daza conducted discovery into the hiring of Mr. Mort-Jones in *Daza I*; and that Mr. Daza relied on INDOT's hiring of Mr. Mort-Jones to bolster his age discrimination and retaliation claims in *Daza I*. [Filing No. 25 at 6-8.] Defendants also argue that res judicata bars the relitigating of claims that should have been asserted, so even if the failure-to-rehire claim was not resolved in *Daza I*, Mr. Daza should have sought to amend his Complaint in *Daza I* to add that claim. [Filing No. 25 at 8-9.] Defendants contend that "this lawsuit is an improper attempt to evade this Court's judgment by changing the window-dressing of Daza I. At their hearts, Daza I and Daza II are identical – lawsuits alleging that Mr. Daza would be working for INDOT but for invidious discrimination and retaliation." [Filing No. 25 at 12.]

In response, Mr. Daza argues that res judicata does not bar his claims because "[t]he 2017 failure to rehire is not the same transaction as the 2015 termination." [Filing No. 27 at 1.] Mr. Daza asserts that the Court, in its Order granting Defendants' Motion for Summary Judgment in *Daza I*, "just stated that the evidence so far was insufficient that Daza applied or that the EEOC Charge factored into a decision not to rehire him." [Filing No. 27 at 9.] Mr. Daza states that he

"argued that the bare facts of the failure to rehire were additional evidence that supported the claims of discrimination and retaliation in the termination, but the Defendants implied that Daza must file a new EEOC charge, and the Court agreed." [Filing No. 27 at 10.] Mr. Daza asserts that the posting of his position and the hiring of Mr. Mort-Jones were "new and discrete acts of discrimination." [Filing No. 27 at 11.] He notes that the failure to rehire him took place after the deadline for amending pleadings and the due date for discovery responses, and that "Defendants refused to produce discovery even of the vacancy postings and the personnel documents of the selected person, Mort-Jones." [Filing No. 27 at 12.] He states that "[t]he Court was not going to allow Daza to file an EEOC Charge, wait for the normal number of months for an EEOC Notice of Right to Sue, amend the amended complaint many months after the time for amendments expired, and begin discovery all over again on the failure to rehire." [Filing No. 27 at 13.] He argues that he did not engage in claim splitting, because the failure to rehire is a separate transaction from the discrimination and retaliation that was the subject of *Daza I*. [Filing No. 27 at 14-15.]

In their reply, Defendants acknowledge that they argued in *Daza I* that the failure-to-rehire claim was not part of *Daza I* and was not actionable in any event, but contend that "[i]n the end, this Court resolved the claim over Defendants' objections." [Filing No. 28 at 2.] Defendants argue that Mr. Daza's attempts to escape his own summary judgment arguments in *Daza I* should be barred by judicial estoppel. [Filing No. 28 at 2-3.] They contend that the Court did not just state that Mr. Daza's evidence was insufficient on his failure-to-rehire claim, but found that Mr. Daza failed to prove that claim. [Filing No. 28 at 3-4.] Defendants also argue that Mr. Daza did not address legal precedent on claim splitting, but rather simply argued that he "did not get a fair shake the first time around." [Filing No. 28 at 4.] They assert that the Court should reject Mr. Daza's

argument that the Court would not have allowed him to pursue a second Charge of Discrimination related to a failure to rehire, while staying *Daza I*. [Filing No. 28 at 5.]

The doctrine of res judicata, or claim preclusion, precludes the same parties from re-litigating claims already decided on the merits in a prior action. *Simon v. Allstate Employee Group Med. Plan*, 263 F.3d 656, 658 (7th Cir. 2001). It "forecloses repeated suits on the same claim, even if a plaintiff advances a new legal theory or a different kind of injury." *Horia v. Nationwide Credit & Collection, Inc.*, 944 F.3d 970, 970 (7th Cir. 2019). Res judicata extends to those claims that could have been raised in the prior action, but were not. *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). To prevail, the party asserting res judicata must establish: (1) identity of the claim; (2) identity of the parties or their privies; and (3) a final judgment on the merits. *Id.* "The fact that the suits [may] differ in some respects, including the legal theories that [plaintiff] is advancing and some of the facts [he] intends to use to prove [his] right to relief, is not enough to defeat a finding" that a subsequent suit is barred by res judicata. *Id.*

There is no dispute that the second and third elements of res judicata are satisfied here. *Daza I* and this case involve the same parties, and a final judgment on the merits was entered in *Daza I*. It is the first element – identity of the claim – where the parties disagree. Two claims are treated as identical for the purposes of res judicata if they arose out of the same transaction; that is, if they are based on the same, or nearly the same, factual allegations. *Id.* (citing *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)). This determination requires a factual inquiry, meaning that two claims based on different legal theories are still treated as one if they are based on the same factual allegations. *Herrmann*, 999 F.2d at 226.

It is undisputed that the Amended Complaint in *Daza I* did not include allegations of a

failure to rehire Mr. Daza in connection with the October 11, 2017 job posting and the hiring of Mr. Mort-Jones in December 2017. Indeed, the Amended Complaint could not have included those allegations because it pre-dated those events. [*See* Filing No. 20 in *Daza I* (Amended Complaint, filed on September 6, 2017).] Defendants' failure to rehire Mr. Daza in connection with the October 11, 2017 job posting constitutes a separate "claim" from the claims raised in the Amended Complaint in *Daza I*. *Horia*, 944 F.3d at 970 (7th Cir. 2019) ("Suppose this were an employment-discrimination suit. On Monday a potential employer turns down an applicant because of the applicant's race. Unfazed, the applicant tries again on Friday and is rejected again, for the same forbidden reason. Does the disappointed applicant have one claim or two? The answer is two").

But even if the failure-to-rehire claim is a separate claim from those raised in *Daza I*, Mr. Daza was required to bring in one lawsuit "all legal theories arising out of the same transaction or series of transactions." *Kim v. Sara Lee Bakery Grp., Inc.*, 412 F. Supp. 2d 929, 941 (N.D. Ill. 2006) (citation and quotation omitted); *Wilson v. City of Chicago*, 120 F.3d 681, 686 (7th Cir. 1997) ("Two claims arising from the same set of facts are one claim for res judicata purposes, and may not be split…by making each claim the subject of a separate suit"). While it is true that INDOT did not hire Mr. Mort-Jones until after the deadlines for filing an Amended Complaint and conducting discovery had expired, and that Mr. Daza had not yet received a right-to-sue letter related to his second Charge of Discrimination, Seventh Circuit guidance is clear under those circumstances: "[T]he requirement to exhaust administrative remedies is no excuse for claim-splitting in [the employment discrimination] context. We've repeatedly explained that a plaintiff in this situation – that is, a discrimination claimant who is waiting for a right-to-sue letter on new claims that are factually linked to an earlier suit – can easily ask the district court to stay the first

case until the EEOC letter arrives." *Barr v. Bd. of Trustees of Western Illinois University*, 796 F.3d 837, 840 (7th Cir. 2015) ("These principles apply here to preclude Barr's second suit. Yes, the second case is a little different from the first in that it complains about age discrimination and presents a different theory of retaliation. Yes, Barr needed to get her right-to-sue letter before she could bring claims in the second suit. But both suits arise out of the same main event: the University's decision not to retain Barr on its faculty"); *see also Smith v. CNA Fin. Corp.*, 2011 WL 1557871, at *5-6 (N.D. Ill. 2011) (holding plaintiff's later claim of age discrimination was barred by res judicata where she brought race discrimination and retaliation claims in earlier suit, noting that "both suits arose out of the same facts, namely [defendant's] failure to promote [plaintiff] and its subsequent decision to terminate her," and finding that plaintiff's lack of a right-to-sue letter did not save her age discrimination claim because, among other things, she could have "ask[ed] the district court to stay her case until she had exhausted her Title VII administrative remedies").

Here too, Mr. Daza's claim that INDOT discriminated against him and retaliated against him by failing to rehire him and by hiring Mr. Mort-Jones is part of the bigger picture of INDOT terminating him and refusing to take him back. As is evident from Mr. Daza's response to Defendants' Motion for Summary Judgment in *Daza I*, Mr. Daza knew about INDOT's hiring of Mr. Mort-Jones shortly after it took place. He asked for discovery regarding Mr. Mort-Jones. And most tellingly, he relied on INDOT's hiring of Mr. Mort-Jones to bolster his discrimination and retaliation claims in *Daza I*. He also filed a Charge of Discrimination regarding the hiring of Mr. Mort-Jones, yet failed to seek a stay in *Daza I* to wait until he received a right-to-sue letter. Mr. Daza wants to have it both ways: he used evidence of Mr. Mort-Jones' hiring to argue that his claims in *Daza I* should survive summary judgment, but now he claims that he did not have a full

and fair opportunity to litigate INDOT's hiring of Mr. Mort-Jones. This is precisely the type of double dipping that res judicata is meant to prevent.

In any event, regardless of whether or not Mr. Daza was required to seek a stay and bring his claims relating to INDOT's hiring of Mr. Mort-Jones in *Daza I*, the fact remains that the parties addressed those claims in their summary judgment briefs, and the Court explicitly ruled on those claims in its Order on Defendants' Motion for Summary Judgment in *Daza I*. Specifically, the Court found that:

> As for INDOT's hiring of Mr. Mort-Jones, who is younger than Mr. Daza, this is insufficient to establish a prima facie case of age discrimination. It is undisputed that INDOT attempted to hire an individual that was older than Mr. Daza to replace him after his termination…. Additionally, INDOT's hiring of Mr. Mort-Jones nearly two years after Mr. Daza's termination does not save Mr. Daza's age discriminate claims….
>
>         \*        \*        \*
>
> As for Mr. Daza's Title VII, ADEA, and Section 1981 retaliation claims based on post-EEOC Charge conduct, Mr. Daza argues that Defendants retaliated against him for filing the EEOC Charge by failing to re-hire him and instead trying to hire another individual and having [another employee] fill in for him, and also retaliated against him for naming the individual Defendants in his Amended Complaint by refusing his requests for reinstatement and eventually hiring Mr. Mort-Jones. Mr. Daza has not provided any authority to support his contention that the post-EEOC Charge conduct here – Defendants sticking to the decision to terminate Mr. Daza by having other employees cover his position and eventually hiring a replacement – can constitute retaliation…. Mr. Daza has not presented any evidence that he even re-applied for his position and was rejected and, even if he had, any evidence that his EEOC Charge factored into a decision not to re-hire him. Defendants simply stayed the course, had employees cover Mr. Daza's duties, and eventually hired a replacement – nothing more. No relevant precedent condemns this behavior, or supports Mr. Daza's retaliation claims under Title VII, the ADEA, and Section 1981 based on post-EEOC Charge conduct….

*Daza*, 331 F. Supp. 3d at 846-50.

In sum, even if Mr. Daza's failure-to-rehire claim related to the October 11, 2017 job posting is a separate "claim" from the claims he raised in *Daza I*, he learned of the claim during

the pendency of *Daza I*, did nothing to formally include it in *Daza I*, yet sought discovery and advanced arguments related to Mr. Mort-Jones. It is a claim that should have been brought in *Daza I*, and was so related to the events that were the subject of *Daza I* that the Court addressed it in its summary judgment order and found that any claim for discrimination or retaliation based on Mr. Mort-Jones' hiring failed as a matter of law. Mr. Daza cannot now relitigate that ruling.

### 2. *Whether Mr. Daza's Failure to Formally Apply for Rehire Bars His Claims*

Although the Court has found that Mr. Daza's claims in this matter are barred by res judicata, it also considers whether Mr. Daza's claims fail as a matter of law because he did not formally apply to be rehired.

In support of their Motion for Summary Judgment, Defendants argue that Mr. Daza's failure-to-rehire claim cannot succeed because he did not apply for the position after it was posted in October 2017. [Filing No. 25 at 13-14.] They contend that his "settlement demand of reinstatement in *Daza I* and his [administrative] proceeding is not a substitute for an application for employment [because INDOT's] hiring process requires one," and that "INDOT could not have taken a discriminatory or retaliatory action regarding an application that did not exist." [Filing No. 25 at 13 (citation and quotation omitted).] Defendants note that INDOT posted the Geologist 2 position in October and November 2017 through online job postings and publicized them on Twitter, but that rather than formally applying, "Mr. Daza chose to focus on seeking reinstatement through settlement negotiations in Daza I and his administrative proceeding." [Filing No. 25 at 13.] Defendants state that INDOT only considered candidates who applied through the job bank. [Filing No. 25 at 13.]

In response, Mr. Daza argues that Defendants "failed to raise an issue in their first motion for summary judgment that Daza did not reapply for the position." [Filing No. 27 at 15.] He also

asserts that he "applied for the position by repeatedly requesting reinstatement to the position." [Filing No. 27 at 15.]  Mr. Daza points to the affidavit of Dodi Blackburn that Defendants filed with their Motion for Summary Judgment, arguing that "[t]he fact that the Defendants have filed new evidence with their second motion for summary judgment is evidence that the failure to rehire legal claim was not part of the pleadings, discovery, and decision in Daza I, even though the Order stated that more evidence was needed." [Filing No. 27 at 16.]  Mr. Daza contends that he must be afforded an opportunity to conduct discovery related to the affidavit.  [Filing No. 27 at 17.]

In their reply, Defendants argue that Mr. Daza has not offered any evidence to counter Ms. Blackburn's statements in her affidavit that Mr. Daza was not considered for the Geologist 2 position because he did not apply for it.  [Filing No. 28 at 5.]  Defendants contend that by seeking reinstatement in settlement, Mr. Daza "sought to bypass the competitive hiring process."  [Filing No. 28 at 5.]

In order to succeed on a discrimination or retaliation claim based on a defendant's failure to rehire, a plaintiff must "first establish a prima facie case by showing that he is a member of a protected class, he applied for and was qualified for an open position, he was rejected for the position, and the position was filled with a person not in the protected class who had similar or lesser qualifications than the plaintiff."  *Grigsby v. LaHood*, 628 F.3d 354, 358-59 (7th Cir. 2010) (citing *Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009)).  Mr. Daza has not provided any evidence that he applied for the Geologist 2 position.  His argument that he "applied for the position by repeatedly requesting reinstatement to the position," [Filing No. 27 at 15], is unavailing.  Ms. Blackburn stated in her uncontradicted affidavit that INDOT only considered applications for the position that were submitted through the online job bank, and that Mr. Daza did not submit an application through the online job bank.  [Filing No. 23-1 at 2.]  Further, Mr.

Daza's "repeated requests" for reinstatement were, according to the evidence presented by Defendants and uncontradicted by Mr. Daza, part of the settlement negotiations in *Daza I*. [*See, e.g.*, Filing No. 23-3 at 2 (December 28, 2017 email from Mr. Daza's counsel to INDOT's counsel stating "Your email below asks us to advise if we desire to proceed with settlement discussions or mediate this case, and Daza has…repeatedly advised that he wishes to do so. INDOT has refused to do so and has done everything it could to prevent the settlement of this case or any issue in it, such as reinstatement").]

In short, as the Court stated in its Order granting Defendants' Motion for Summary Judgment in *Daza I*, "Mr. Daza has not presented any evidence that he even re-applied for his position and was rejected…." *Daza I*, 331 F. Supp. 3d at 850. Consequently, in addition to being barred by the doctrine of res judicata, Mr. Daza's discrimination and retaliation claims fail as a matter of law for the additional and independent reason that he has not presented any evidence that he applied for the Geologist 2 position.[4]

Defendants' "Early" Motion for Summary Judgment, [Filing No. 24], is **GRANTED**.

## II.
### MOTION FOR RULE 11 SANCTIONS

In support of their Motion for Rule 11 Sanctions, Defendants argue that Mr. Daza's lawsuit is frivolous because it is barred by res judicata, and set forth the same arguments they make in support of their Motion for Summary Judgment. [Filing No. 16 at 8-15.] Defendants also argue

---

[4] While Mr. Daza complains that he should be permitted to undertake discovery to marshal evidence to respond to Ms. Blackburn's affidavit, he failed to comply with the provisions of Fed. R. Civ. P. 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Mr. Daza did not submit an affidavit or declaration in support of his argument that he was unable to present evidence addressing Ms. Blackburn's affidavit.

that the lawsuit is frivolous because Mr. Daza never applied for the Geologist 2 position with INDOT after his employment was terminated, again relying on the arguments they set forth in support of their Motion for Summary Judgment. [Filing No. 16 at 16-17.] Defendants submit an October 16, 2018 letter from their counsel to counsel for Mr. Daza, which sets forth Defendants' arguments and requests that Mr. Daza voluntarily dismiss the lawsuit with prejudice, [Filing No. 16-3], Mr. Daza's counsel's November 6, 2018 response, [Filing No. 16-4], and their counsel's January 10, 2019 letter attaching Defendants' Motion for Rule 11 Sanctions, [Filing No. 16-5].

Mr. Daza responds to the Motion for Rule 11 Sanctions by setting forth the same arguments that he advances in opposition to Defendants' "Early" Motion for Summary Judgment. [Filing No. 18.]

In their reply, Defendants reiterate the arguments they made in connection with their "Early" Motion for Summary Judgment. [Filing No. 19.]

Federal Rule of Civil Procedure 11 provides that:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b). "Rule 11 imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). It "requires that attorneys certify 'to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances' that their filings have adequate foundation in fact and law and lack an 'improper purpose.'" *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d

573, 583 (7th Cir. 2019) (quoting Fed. R. Civ. P. 11).  Rule 11 "is principally designed to prevent baseless filings."  *Brunt*, 284 F.3d at 721 (citation omitted).

Rule 11 sanctions may be appropriate where a party asserts claims that are clearly barred. Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation"); *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (imposing sanctions under Rule 11 because "it should have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata [and] judicial estoppel").  In order to determine whether Rule 11 sanctions are warranted, the Court "must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless."  *Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citation and quotation omitted).

Here, although the Court has concluded that Mr. Daza's claims are barred by res judicata and because he did not apply for the Geologist 2 position, the Court finds that Mr. Daza's claims in this lawsuit do not reach the high standard of frivolous or harassing.  The circumstances presented here indicate that Mr. Daza and his counsel could have thought that he had not yet formally raised claims related to INDOT's hiring of Mr. Mort-Jones.  First, is undisputed that Mr. Daza did not set forth claims in his Amended Complaint in *Daza I* related to the hiring of Mr. Mort-Jones.  He could not have done so, because INDOT had not yet hired Mr. Mort-Jones when Mr. Daza filed his Amended Complaint.  Second, as Mr. Daza has argued, the deadlines for amending his pleadings to add claims related to the hiring of Mr. Mort-Jones and for completing discovery had passed.  Third, he had not yet received a right-to-sue letter related to INDOT's hiring of Mr. Mort-Jones instead of him.  Although, as discussed above, the Seventh Circuit has instructed

that plaintiffs should seek a stay in this situation, the Court does not find Mr. Daza's failure to do so and his initiation of this lawsuit to pursue those claims so egregious as to warrant Rule 11 sanctions.  *See Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 335 (7th Cir. 1992) (affirming district court's denial of motion for Rule 11 sanctions where plaintiff's Title VII complaint was barred by res judicata).

Additionally, it is plausible that Mr. Daza and his counsel did not read the Court's Order granting summary judgment in *Daza I* as definitively ruling on the claims related to the hiring of Mr. Mort-Jones, since those claims were not formally raised in *Daza I* – although, as discussed above, the hiring of Mr. Mort-Jones was relied upon by Mr. Daza in opposing Defendants' Motion for Summary Judgment in *Daza I*.  Additionally, Mr. Daza's, and his counsel's, advancement of the argument that he "reapplied" for the Geologist 2 position through informal requests from counsel is not so frivolous as to warrant Rule 11 sanctions.  And finally, Defendants have not presented any evidence indicating that Mr. Daza or his counsel initiated this lawsuit for purposes of harassment, or to needlessly increase the cost of litigation.

In short, while summary judgment is appropriate in this case, the Court finds that Mr. Daza's filing of this lawsuit was not frivolous nor have Defendants presented any evidence indicating that the lawsuit was intended to harass them or needlessly increase litigation costs. Defendants' Motion for Rule 11 Sanctions, [Filing No. 16], is **DENIED**.  That said, Mr. Daza and his counsel are strongly cautioned that they should now consider any claims Mr. Daza had against Defendants related to his termination or his efforts to be reinstated to have been fully and fairly litigated.

### III.
### CONCLUSION

For the foregoing reasons, Defendants' "Early" Motion for Summary Judgment, [24], is

**GRANTED**, and their Motion for Rule 11 Sanctions, [16], is **DENIED**.  Final judgment shall enter accordingly.

Date: 1/10/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**